All right, we're going to proceed now with case number five of the morning. This is appeal 21-1874, United States v. Antonio Edwards. We're going to begin with argument from counsel for the appellant, Mr. Kennedy. Thank you, Your Honor. Good morning, Your Honor. My name's John Kennedy, and I represent Antonio Edwards. There are two issues in this case, and I'd like to really address them both. The first issue is propensity of what I would call propensity evidence, and it runs – the problem is there's a lack of uniqueness in the other robberies that were used under 404B. And I realize it's an easy thing to say, but as a nutshell, the case U.S. v. Gomez started to say, look, we have to consider 402 relevance more. It said Gomez pointed out that if mechanically applied, the list of exceptions under Rule 404B would simply eviscerate the bar against propensity evidence. Any time other crimes evidence is used, there is an aspect of propensity evidence to it. It can't be avoided. And in this case, I think that what has to be considered is the kind of case that was occurring before the propensity evidence came in, which was it's the Waukegan robbery. It's an armed robbery of a cell phone store by several individuals. Mr. Kennedy, I'm sorry to interrupt you, but on the 404B, there are two surveillance footages that came in that you're challenging, one with the Chicago robbery and one with the Bradley robbery. On the Bradley robbery, there was a substantive count for his possession of a gun in connection with that robbery. So it seems like that evidence was coming in regardless if it came in under Rule 404B for substantive evidence. And the court gave a limiting instruction to the extent it came in under 404B. What's the prejudice to you in light of that, that it was coming in anyway? Well, may I say to Your Honor that I'm afraid I have to agree that the Bradley evidence was coming in under any scenario because it was an element of the brandishing the firearm. I'm sorry to interrupt. I just want to make sure I understand the argument. Is your focus on the 404B then, Mr. Kennedy, on the Chicago robbery evidence? Or are you still arguing what I understood, that you were arguing both? And if so, you're going to have to explain the Bradley to me. Well, Bradley would simply be that the – well, the trial court did what it had to do. It gave a limiting instruction as to Bradley. So how could there have been prejudice to your client if it was coming in – the Bradley. How could the Bradley evidence have been prejudicial to your client, which is part of the analysis here, if it was coming in anyway for the substantive possession count? Well, thinking about it, it could have been stipulated, but it wasn't. It could have been stipulated. But that's a separate question. There was a prior felony. As you know, the court can't force the government to stipulate or the defendant to stipulate to any particular evidence. And this was direct evidence of the possession because your client was captured on the video with the gun. Yes. So I don't understand how it could be ultimately prejudicial under the 404B analysis. You know, Your Honor, I'll go back on what I previously said, and I'll say I agree with you. It's not improperly prejudicial to the client because it's – the video does show him, as I understand it, with a gun. So your focus – What's he going to do? I mean, that's relevant. Your focus is more on the Chicago robbery evidence as opposed to the Bradley. Yes. Okay. Yes. And the problem – what I would ask the court to consider on the Chicago robbery – I mean, just because one of these robberies can come in doesn't mean that both of them should come in. It gets to be overkill. It gets to be overwhelming propensity just by repeating the same offense – type of offense. But in this Waukegan robbery, there were three witnesses. Two of them said, we don't know who did it. The third one said – who was Diago Acasto – said, well, he could – Diago could not pick out – picked out the wrong person, picked out somebody else from the photo array. The defense lawyer characterized it as Diago saying that Diago said the defendant was not the robber, which is, strictly speaking, true. So the government has a fairly terrible case. Its star witness, James Bates, is a getaway driver. He has – he initially told the police he was forced to drive the getaway car. He has a motive to lie because he has gotten a terrific plea agreement, and he's very impeachable. So the government, in fact, admitted that it basically had a circumstantial case. So what we come to is what's the swinging aspect of this case? The thing that makes it go against Antonio Edwards. And propensity evidence is very condemning. It's very strong. It is something that will overwhelm the jury's willingness, really, to listen to the defense. How do you get around the court's limiting instruction here? The court gave our pattern instruction on one other act's evidence. We presume the juries follow court's instructions. I don't know if the court gave the instruction at the time the evidence was admitted, but it was certainly given at the end of the case. Why doesn't that cure it here? Because it's a fiction that the court follows an instruction like that. The evidence is so spectacular. The jury, they're people. They're going to rely on their own common sense, and they're going to say the instruction doesn't work. So you're asking us to say the presumption that juries follow instructions should be rebutted based on the nature of this? I'm saying in this particular case, with this kind of evidence that's very visceral, that a jury instruction cannot be expected to be followed. I think a jury instruction can be expected to be followed when it states the elements of the offense, the burden of proof, that kind of thing. When it thinks the jurors don't think they themselves know. But when they themselves have a visceral reaction, I believe that the jury instruction cannot go far enough. Mr. Kennedy, was the instruction given at the time the evidence was admitted as well as at the end of the case or just at the end of the case, if you know? I can't tell the court. I don't know. If I may, I only have two minutes and 19 seconds left. There is one other thing I would like to mention, which is the second argument. The first argument, I could rattle on about it, but really, my feeling is that 404B, jury instructions won't cure 404B errors. Even though the instruction is given, don't consider it. Sometimes, if there is an error, a case will be reversed because the 404B shouldn't have come in. The other thing, though, argument two, use of witness testimony transcripts. This was a complicated case. There were 14 witnesses. One of them was a woman whose name I can't remember now who actually testified a lot about a different robbery. I believe it was the Chicago robbery. By the time one reads the transcript, one is confused about what's going on in this case, how many charges are there. Because this is such a complicated case with 14 witnesses, four days of trial, and other crimes evident, the jury's question about what did Diego say? Did he say it was or was not Antonio Edwards who was the robber? With that question, I think that question really should have been answered, and it's changing time. I cite a case from 1994. I think the government cited one from 1996. That's a long time ago in the computer world. Now transcripts are heard on the machine. They're just spit out by computer. There isn't a huge burden to get a transcript to the jury now. So, Mr. Kennedy, it may be true, and maybe one option is to provide the transcript, but we're reviewing here for abuse of discretion. How could the court have abused its discretion by telling the juror to rely on its collective memory, which is what we always tell juries to do? Well, just because that's what they're told doesn't mean it's really helpful to them. Howard, the question itself reveals that they don't have a collective memory. Under those circumstances, it's necessary for the jury to consider the evidence where the government has introduced this propensity evidence. It's especially necessary that they know the answer to this question. And the other thing I would comment is that perhaps this is a rule that should be reviewed and not perhaps work to the benefit of Antonio Edwards, but perhaps moving forward. There should be a greater requirement that the trial judge allows the jury or provides the jury the transcript of a witness's testimony if the witness requests it. And I can't believe it. I am totally out of time. Thank you, Mr. Kennedy. We're going to now move to argument from the apli, Mr. Bond. Good morning, Your Honors. May it please the Court. Your Honors, in this case, the district court correctly admitted evidence of the Chicago and Bradley robberies under 404B as evidence of the defendant's modus operandi and identity as a participant in that Waukegan robbery. Furthermore, the limiting instruction utilized by the court functioned to ensure that the evidence was considered by the jury only for the permissible purpose, approving identity, and only if the jury found that the robbery shared unique, distinctive features, which they did. Mr. Bond, do you know the answer to the question if the judge gave the limiting instruction at the time this evidence was admitted or just at the end of the case? Your Honor, I can't give you a 100% answer. I do recall from the trial, I believe at least one of the robberies, the limiting instruction, was read at the time. I do not believe both were. I believe the Chicago robbery was not read at the time, or it could be vice versa. It was read, Mr. Bond, at the entry of the evidence and at the close? For certain, at the close of the case. Did you decide the case? I did, Your Honors, yes. And you don't recall whether it was entered at the time of the objection? My understanding, the objection was made, Your Honors, at the time of the pretrial conference by defense counsel at the time, and we argued the 404B motion with the judge prior to picking the jury. My recollection is that the instruction was not read at the initial time of the entry of the evidence, but it was obviously read at the end of the case during the period of time when the jury instructions were read. My recollection, again, is that at least one of the robberies, though, I don't recall if it was Waukegan or Chicago. One of the instructions was read at that time, but again, I apologize, I can't give a 100% answer on that, but I do know they were obviously for certain read at the end of the conclusion of the case by the judge. Mr. Bond, was there discussion at the time that the 404B motion was heard and decided about lack of notice? 404 requires notice by the government of this information. Obviously, certain aspects of this evidence was charged conduct, which was pleaded to, but not all. So my question is, it sounds like it was only one day between the motion and the trial starting. Is that correct? Yes, Your Honor, and to answer your question, what occurred in this case is that the defendant, Mr. Edwards, was also charged in a conspiracy count. And we were proceeded to prepare to go to trial in a conspiracy count, which would have brought in this 404B evidence under the conspiracy count. What happened on the day before trial was Mr. Edwards pled guilty to that conspiracy charge. So we were informed of that the Friday before trial started. So we spent the weekend crafting our 404B motion, which we presented to the court on Monday. So that was the timing of this, and that's why it appears like that on the record. But that is what actually happened. So as soon as we found out the conspiracy was going to be pled to, we told counsel, hey, we're going to file this motion. We'll get it ready this weekend. We'll have it ready by Monday. Thank you. I appreciate that context. Sure. And if I may, to point out the Chicago, the Bradley, and the Waukegan robberies, they all involved a unique pattern. They all shared idiosyncratic features. All three robberies involved cell phone stores. They all occurred around 530 p.m. All members of the robbery crew used something to avoid leaving fingerprints. They wore a hat or a hood to conceal identity. They put the cell phones into black garbage bags. Each robbery occurred in the same pattern, coming into the store, waiting for customers to leave, locking the front door, leaving out a back door to a waiting getaway car. It involved similar division of labor. Moving employees in the same way, at gunpoint, to the back of the store where there was a safe. Accessing the store safe. Dismantling or trying to dismantle store security. Not taking hostages. And each robbery occurred all within approximately a one-month period of time. These roughly individual, excuse me, individually, these roughly 10 to 15 characteristics, government acknowledges, they are common to many robberies. However, when they are taken together, they become sufficiently idiosyncratic to permit that inference of a distinct pattern. And while the robberies are not identical, any minor differences do not undermine what is an undeniable pattern of distinctive features. Also, not only were the Chicago and Bradley robberies appropriately admitted for modus operandi, but they were probably admitted because the surveillance video footage, or in the surveillance video footage shown to the jurors, one of the robbers from the Waukegan robbery looked, walked, and acted exactly like the defendant as he appeared and was identified in the surveillance videos from Chicago and Bradley robberies. This allowed the jury to compare the physical descriptions and images of the defendant as he appeared in the Chicago and Bradley robberies, where he was positively identified by the victims, and where he appeared clear as day in the surveillance video to his appearance in the Waukegan robbery, where he was not identified by the victims, where he was only identified by the co-defendant, excuse me, cooperating co-defendant, James Bates, and where the surveillance video was not as clear. Mr. Bond, what did Mr. Bates testify to with regard to the Waukegan robbery? Mr. Bates testified as to how the Waukegan robbery was planned and how it happened. He described a meeting prior to the robbery earlier that day. He discussed driving to the robbery. His role was the getaway driver, as he was also in the Bradley robbery. He discussed how the robbery went down, how he dropped off the defendant and the two other individuals, how they went in the store, how he waited in the parking lot and then made his way to the back of the store where the rear exit door was and waited for them to come out. He also was shown the videos of the robbery, and he identified the defendant, Antonio Edwards, in those videos. Specifically, if I recall him saying, well, how do you recall that was Antonio Edwards? Well, because the way he walks, the way he looked. Well, Mr. Bond, if you had that direct evidence by Mr. Bates, what was the need for the propensity evidence? Sure, your honor, I think this ties into one of my other points is that if you look under rule, 403, the prejudicial versus probative balancing test in a case like this, where identity is really the sole issue of disputing the Waukegan robbery under the rule, 403 balancing test. The degree to which a fact is contested matters and probative value increases based on the degree to which not propensity issue is actually disputed. So here, where the identity was so thoroughly disputed in the Waukegan robbery, the defendant's whole theory was that he was not present at the Waukegan robbery. This means that the evidence that the defendant committed the Chicago, Waukegan, Bradley robberies using the same M.O. was highly probative. Mr. Bond, let me ask you this question. If we have an inquiry as we have here from obviously one juror at least about the identity, does that speak to the need for you to have entered the evidence? Or does that question maybe the prejudicial aspect of the entry of the other crimes evidence? If you've got a juror who's asking a question about the identity of Edwards and a response, how long did the trial take? The trial testimony went three days. The trial itself was four. So Diego Acosta's testimony was on the first afternoon, and the question was on the three days later on during a… So it's…and the judge is saying just rely on your collective memory, which is commonly done. I'm not questioning the appropriateness of that. But I just…it poses some concern to me that you've got Bates, you've got this other crimes evidence, and you still have a juror raising the question about identity. If I may, Your Honor, I think what that goes to is the fact that this was highly unusual in that one of the victims of the Waukegan robbery testified that he identified someone else in a photorec. So clearly that was an issue that was…clearly that identity issue was…that was why…probably why that question was brought forth by the jurors. What did the…with the conviction in this case, what did that add to the gun conviction, add to the sentence, overall sentence, since he pled to the conspiracy and the other two crimes? Your Honor, the sentence in this case was, I believe, 224 months. I believe 56 months on the robberies and the conspiracy concurrent, followed by two consecutive seven-year sentences on the 924Cs, so 84 plus 56. So, just to get back to your questions, I do want to point out there was, nonetheless, there would be harmless error in this case as well. We think there was substantial evidence in addition to just the 404B evidence. You had James Bates' testimony, but you also had, in this matter, spell tower records that placed the defendant's phone at the scene of the robbery, call logs showing the defendant and Bates and the defendant and other co-conspirators in communications at and near the time of the robbery, as well as video surveillance where Defendant Bates identified the defendant in the Waukegan store saying, that's what he was wearing that day, I remember, because I drove him there. So, are there any other questions from the court? I see my time has expired. Thank you, Mr. Bond. Mr. Kendi, we'll give you one minute for rebuttal. Thank you, Your Honor. I'd like to mention that the witness, Bates, on his arrest initially told the police that he was forced to drive the car to various robbery sites, hurting his credibility right off the bat. He had a terrific plea agreement. As far as the cell phone evidence, there's no testimony as to who had the cell phone. Sure, the cell phone evidence, the cell phone's near a tower, but who was using that cell phone? As far as, kind of a fascinating issue is the statement, probative value increases as the cases, the issue is disputed more. And I agree, that's what the cases say. I don't understand that rule. It seems to say that, well, if the defendant hotly contests identity, then other crimes evidence can come in. But if he doesn't hotly contest it, then other crimes evidence cannot. To my mind, that isn't logical. So I would ask the court to consider that, just exactly what is the nuance of this rule that probative value increases. And with that, I thank the court for the extra minute, and I conclude. Thank you, Mr. Kendi. Thank you, Mr. Bond. The case will be taken under advisement.